UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MURPHY #183248,

    Plaintiff,                                    Hon. Janet T. Neff

v.                                            Case No. 1:15-cv-657

JOHN JOBOULIAN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 49). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.

## BACKGROUND

As detailed herein, Plaintiff asserts that between September 19, 2012, and April 15, 2014, Defendants Byard, Cooley, Hanline, Joboulian, Karp, Minnich, Murphy, Suppes, and Russell failed to provide him with adequate dental care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants now move for summary judgment.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.     Eighth Amendment Standard**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of

medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

**II.        Medical Record and Other Evidence**

The parties have submitted a substantial amount of evidence, the relevant portions of which reveal the following.

On or about September 19, 2012, Plaintiff requested dental treatment because "a filling has come out and my tooth and gum are hurting." (ECF No. 50-2 at PageID.194; ECF No. 65-3 at PageID.425). Plaintiff was informed that he had been placed on "the exam list to evaluate the treatment necessary." (ECF No. 50-2 at PageID.194). On September 4, 2013, Defendant Cooley examined and treated Plaintiff. (ECF No. 50-2 at PageID.194-95). Specifically, Defendant Cooley restored the filling in Plaintiff's tooth. (ECF No. 50-2 at PageID.195). On September 24, 2013, Plaintiff was examined by Defendant Joboulian whose "treatment plan" was that Plaintiff receive fillings for two other teeth and be provided a bite guard. (ECF No. 50-2 at PageID.196-97).

On or about January 27, 2014, Plaintiff requested dental treatment due to a "broken filling/tooth being very sharp and cutting his mouth." (ECF No. 50-2 at PageID.197; ECF No. 65-3 at PageID.427). Defendant Hanline determined that Plaintiff "will be seen as staff and time permits." (ECF No. 50-2 at PageID.197). Two days later, Plaintiff was examined by Defendant Joboulian. (ECF No. 50-2 at PageID.197). Plaintiff reported that the tooth was not causing him any pain, but that the sharp edge of the tooth was cutting his tongue. (ECF No. 50-5 at PageID.228). Joboulian determined that the tooth in question was "nonrestorable." (ECF No. 50-2 at PageID.197; ECF No. 50-5 at

PageID.228-29). Joboulian "smoothed" the "sharp edge" of Plaintiff's tooth and referred Plaintiff to an oral surgeon so that the subject tooth could be extracted. (ECF No. 50-2 at PageID.197-98; ECF No. 50-5 at PageID.228-29).

Between February 2, 2014, and February 23, 2014, Plaintiff submitted several "urgent" requests for dental care. (ECF No. 50-2 at PageID.198; ECF No. 65-3 at PageID.428-33). On February 25, 2014, Plaintiff was examined by Defendant Byard who determined that Plaintiff was experiencing difficulty with certain teeth which should be extracted. (ECF No. 50-2 at PageID.198; ECF No. 50-6 at PageID.240-42). Defendant Byard also prescribed an antibiotic medication for Plaintiff. (ECF No. 50-2 at PageID.198; ECF No. 50-6 at PageID.240-42). Byard did not prescribe any pain medication because Plaintiff was able to purchase over-the-counter pain medication from the prison store. (ECF No. 50-6 at PageID.240-42).

On March 7, 2014, and again on March 17, 2014, Plaintiff submitted an "urgent" request for dental care. (ECF No. 50-2 at PageID.198; ECF No. 65-3 at PageID.434-35). On March 19, 2014, Plaintiff was examined by Defendant Minnich who determined that one of Plaintiff's teeth needed to be extracted. (ECF No. 50-2 at PageID.198-99). Defendant Minnich did not, however, perform this treatment himself because it was "out of [his] skill level" and, furthermore, because Plaintiff was already scheduled to treat with an oral surgeon the following month. (ECF No. 50-2 at PageID.198-99; ECF No. 50-8 at PageID.258). Defendant Minnich prescribed an antibiotic medication and pain medication for Plaintiff. (ECF No. 50-2 at PageID.198-99; ECF No. 65-8 at PageID.457-58).

On March 24, 2014, and again on April 1, 2014, Plaintiff submitted an "urgent" request for dental treatment. (ECF No. 50-2 at PageID.199; ECF No. 65-3 at PageID.436). On April 3, 2014, Plaintiff was examined by Defendant Murphy. (ECF No. 50-2 at PageID.199-200). Murphy determined

that the extraction of the tooth that was causing Plaintiff problems was "positioned in a difficult manner to be extracted" and "was more than what a routine extraction would entail." (ECF No. 50-9 at PageID.267). Murphy noted that this is why Plaintiff was scheduled to have an oral surgeon remove the tooth in question. (ECF No. 50-9 at PageID.267-68). Defendant Murphy nevertheless prescribed an antibiotic and pain medication for Plaintiff. (ECF No. 50-2 at PageID.199-200; ECF No. 50-9 at PageID.268-70). On April 15, 2014, Plaintiff had his troublesome tooth extracted. (ECF No. 50-2 at PageID.200-01).

This evidence reveals that, for analytical purposes, there exist two distinct time periods regarding which Defendants' conduct must be evaluated: (1) September 19, 2012, through September 4, 2013, and (2) September 5, 2013, through April 15, 2014.

    A.  September 19, 2012, through September 4, 2013

Plaintiff's claim regarding this period of time fails for two separate reasons: (1) except as to Defendant Suppes, Plaintiff has presented no evidence that Defendants were aware of his alleged need for medical treatment; and (2) Plaintiff has failed to present verifying medical evidence that this delay in treatment caused him to suffer any detrimental effect.

    1.  Detrimental Effect of a Delay in Treatment

As discussed above, to prevail on his denial of medical treatment claim, Plaintiff must demonstrate that he was suffering a medical need sufficiently serious to implicate the Eighth Amendment. The evidence reveals that Plaintiff submitted a request for dental treatment on or about September 19, 2012. Plaintiff requested dental treatment because one of his fillings had "come out."

While Plaintiff's filling was subsequently restored, he had to wait almost one year for such. At his deposition, Plaintiff testified that during the time he was awaiting treatment, he did not experience severe pain, was able to eat, and was able to perform his prison job. (ECF No. 50-4 at PageID.217-22).

These facts demonstrate that Plaintiff was not experiencing a serious medical need. *See, e.g., Rouse v. Caruso*, 2014 WL 7877155 at *11 (E.D. Mich., Aug. 5, 2014) (claim by inmate that he was forced to "wait over a year" to obtain treatment for a loose filling, did not implicate a serious medical need under the Eighth Amendment); *Coleman v. Stevenson*, 2010 WL 2990740 at *2 (D.S.C., July 26, 2010) (where prisoner "lost [a] filling," such "does not constitute a serious medical condition").

Because Plaintiff was not experiencing during this particular time period a serious medical condition, he must demonstrate that the delay in treatment he experienced caused him to suffer a medically verifiable detrimental effect. *See, e.g., Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004) ("an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed"). Plaintiff has presented no such evidence. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this particular claim.

2.    Defendants' Knowledge of Plaintiff's Request for Treatment

As previously noted, Plaintiff submitted a request for treatment on or about September 19, 2012. This request for treatment was received by Defendant Suppes[1] who responded to Plaintiff that he had been placed "on the exam list to evaluate the treatment necessary." The record is devoid of evidence illustrating or explaining how this "exam list" works or generally how a prisoner's request for

---

[1] Plaintiff alleges in his complaint that Suppes is a Dental Assistant, an assertion consistent with Plaintiff's treatment records. (ECF No. 65-4 at PageID.438). The parties have failed, however, to submit evidence definitively establishing such.

treatment is processed and communicated to individuals participating in the healthcare delivery process. Simply put, the record contains absolutely no evidence that any Defendant, other than Defendant Suppes, was aware of Plaintiff's September 19, 2012 request for treatment. As previously noted, to prevail on an Eighth Amendment denial of medical treatment claim, Plaintiff must establish that Defendants had actual knowledge that he required treatment and nevertheless failed to provide appropriate treatment. Accordingly, the undersigned recommends, that Defendants Byard, Cooley, Hanline, Joboulian, Karp, Minnich, Murphy, and Russell are entitled to summary judgment on this alternative ground.[2]

The Court recognizes that this particular analysis could arguably permit a care provider to avoid Eighth Amendment responsibility by shielding themselves from knowledge of a prisoner's need for treatment by improper use of a third-party intermediary. Nevertheless, this concern, by itself, is an insufficient basis for denying Defendants relief. First, there is no evidence that Defendants have acted to unreasonably shield themselves from knowledge that Plaintiff (or any other prisoner) required or requested treatment. Second, while Plaintiff could have presented evidence regarding the relevant complaint intake process and thus, by inference or implication, imputed to Defendants the requisite knowledge, Plaintiff has failed to do so.

The law requires Plaintiff to demonstrate that Defendants had actual knowledge that he required medical treatment. To find that Defendants Byard, Cooley, Hanline, Joboulian, Karp, Minnich, Murphy, and Russell possessed such knowledge, given the present record, is possible only under a theory of respondeat superior liability which is not permitted. Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability. *See Bass v. Robinson*, 167 F.3d 1041,

---

[2] While subsequent evidence may establish that Defendant Suppes acted reasonably in this matter, this issue has simply not been sufficiently developed to warrant relief, at this juncture, on this basis.

1048 (6th Cir. 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998). Likewise, liability does not attach to a supervisory employee "based solely on the right to control employees, or simple awareness of employees' misconduct." *Walters v. Stafford*, 317 Fed. Appx. 479, 486-87 (6th Cir., Mar. 18, 2009). Instead, Plaintiff must demonstrate *personal involvement* by a particular defendant. *See Bass*, 167 F.3d at 1048 (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"). In sum, Plaintiff was required to establish that Defendants had actual knowledge that he required treatment. Except as to Defendant Suppes, Plaintiff has failed to do so.

        B.       September 5, 2013, through April 15, 2014

As the medical evidence discussed above makes abundantly clear, with respect to this brief period of time, Plaintiff's claim is based upon nothing more than his disagreement with the treatment that he received. The evidence reveals that Plaintiff's dental issues were treated in a timely fashion. As previously noted, while Plaintiff may disagree with his care provider's treatment decisions, such disagreement does not implicate the Eighth Amendment.

As for Plaintiff's claim that his rights were violated by Defendants' refusal to prescribe him stronger pain medication, such is defeated by the unrefuted expert report submitted by Greg Komyathy, DDS. Plaintiff testified at his deposition that he has been taking Zoloft since 2008. (ECF No. 65-5 at PageID.446). According to Dr. Komyathy, because Plaintiff was taking Zoloft, "only over the counter medications should have been used" lest he suffer possible "Respiratory Depression." (ECF No. 50-12 at PageID.303). Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's claims regarding this period of time.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 49), be **granted** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 8, 2017

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge